MAGRUDER & CO. v. CLAYTON.

1. Whether lienees and mortgagees had made improper use of their securities, and whether the sales of property thereunder were collusive, unfair, and fraudulent, are questions of fact, and the negative findings of the Circuit Judge in this case are not opposed by the overbearing weight of the testimony.

2. This court will not disturb the findings of fact in a Circuit decree, unless such findings are without evidence to sustain them, or are against the weight of the evidence. This, it seems, is especially so when the trial judge saw the witnesses and heard them testify.

3. A plaintiff may unite in one action a money demand against his debtor and a claim to have set aside for fraud certain transactions between such debtor and others of his creditors; and plaintiff failing in his sec-

ond cause of action, is nevertheless entitled, on proper proof, to judgment on the money demand.

4. Where all the issues in a cause are heard by the judge without objection, it will be assumed that as to an issue triable by jury, a jury was waived in the formal mode required by the code.

Before WALLACE, J., Chesterfield, February, 1887.

This was an action by T. J. Magruder & Co. against Virgil P. Clayton, Henry Bischoff & Co., and J. R. Easterling, begun in February, 1886. The opinion sufficiently states the case.

*Messrs. Newton & McQueen*, for appellants.

*Messrs. Townsend & McLaurin*, contra.

October 13, 1888. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. It seems that Virgil P. Clayton, being engaged in agriculture, desired to procure advances to be expended in the cultivation of the soil. In pursuance of an agreement between himself and Henry Bischoff & Co. to that end, he executed to them a lien upon his crop for the year 1885, and also a mortgage of certain horses and mules (eleven in number), to secure the payment of two thousand dollars, to be advanced to him by them during the year. The liens were dated January 25, 1885, and the debt was due the following November. Finding afterwards that the above sum of $2,000 would not be enough to answer his purposes, he executed May 13, of the same year, an additional mortgage of his stock of goods to further secure the $2,000 and the additional sum of $1,000, making in all to be advanced the sum of $3,000.

In the beginning of January, 1886, Bischoff & Co. commenced the enforcement of their liens, by procuring a warrant from the clerk of the court for Chesterfield County, for the sale of what of the crop of 1885 remained on hand, and by advertising for sale the horses and mules and stock of goods on hand. It seems that the sale of the crops, seized under the agricultural lien, was made January 22, by the sheriff at "Cash's depot" (where Clayton lived), and were purchased by J. R. Easterling, the agent of Bischoff & Co.,

and said agent, as he stated, left the property on the premises until some arrangements could be made for the removal and disposition of it. The allegation was that the sale was collusive for the benefit of Clayton. The property was sold for cash and did sell low—the sale amounting in the aggregate to $811.40. The mortgaged property, the horses and mules and stock of goods, after due advertisement, were sold on January 29, the animals at Clayton's plantation, and the merchandise at Cash's depot. This property was also bid off by Easterling, the said agent of Bischoff & Co.—the stock sold for $848, and the merchandise for $600. This property was also left on the place, in charge of Mr. Clayton.

It seems that in the month of September previous (1885), Clayton had bought a bill of goods from the plaintiffs, T. J. Magruder & Co., amounting to $714.98, and they instituted this proceeding to recover judgment on the said demand against Clayton, and to set aside as fraudulent and void, not only the liens, bills of sale, and mortgages above described as given by Clayton to Bischoff & Co., but also the sales above stated, as made under and by authority of the same, on the general ground that there was fraudulent collusion and combination between Clayton, the auctioneer, and Easterling, the agent of Bischoff & Co., to prevent fair competition; that the property was sold hastily, some of it in bulk, without proper notice, and in other ways the biddings were "chilled," thus enabling Easterling, the agent of Bischoff & Co., the holders of the liens, to buy the property at much less than its true market value, &c. The principal prayer was that Bischoff & Co. be required to account for all of the aforesaid property so purchased, at its proper market value. The plaintiffs also procured from the clerk of the court an attachment, and on the day after the last sale of the mortgaged property (goods, horses and mules), all of said property, still remaining on the place, was seized under the attachment by the sheriff, who had the attached property "appraised," and was proceeding as the law in such case directs, when on motion the attachment was set aside by judicial order, and the property returned to the possession of V. P. Clayton, who claimed to have control of it as the agent of Bischoff & Co. It seems that afterwards J. B. E.

Sloan.& Son, cotton factors in the city of Charleston, agreed to buy for Mrs. Clayton, wife of V. P. Clayton, all the property of Clayton which had been bought by Bischoff & Co., and to advance supplies to her for a year. By this sale Bischoff & Co. received no more than was sufficient to pay their debt.

All the defendants answered, insisting upon the legality of the liens, and denying all collusion, combination, and fraud charged as to the sales made under them; but, on the contrary, they averred that the said sales were open and fair, that the property brought its cash value at the time, and that no unfair advantage was gained by Bischoff & Co. by reason of their aforesaid purchases. The defendant, Clayton, in addition denied that, at the time of the execution of the liens, he was insolvent, and that they covered all the property he owned at the time, and that said securities were given to Bischoff & Co. for the purpose of giving them a preference over other creditors. He, however, admitted that the account sued on by the plaintiffs was correct, and that no part of the same had been paid; but he denied that it was due and owing on January 6, 1886, as claimed.

The cause came on to be heard by Judge Wallace. Much testimony was taken, which is all printed in the Brief. The judge held as follows: "I have read the testimony carefully and am satisfied that there was no fraudulent collusion at any time between Clayton and Bischoff & Co., or their agent, Easterling. I think the original transactions between them were strictly business transactions, from which each expected advantages for himself, and that when Clayton failed to pay his obligations at maturity, Bischoff & Co. desired to collect the sum due them by means of their securities, which they enforced for that purpose alone, and according to the methods provided by law. They bought the goods for a sum sufficient to pay or finish paying their debts, and if the goods were worth more the plaintiffs might have done the same thing, and made them bring enough to pay their debts; the purchasers took the risk of realizing from the goods a sum sufficient for the payment of their debt, and nothing hindered the plaintiffs from doing the same thing. There is nothing in the testimony showing any intent upon the part of Bischoff & Co. to favor Clayton to the prejudice of his other creditors. They per-

haps did not know that he had any other creditors.  At the time
of the execution and delivery of the liens to Bischoff & Co., the
plaintiffs were not creditors, and the execution of such securities
for a present consideration, with no intent to delay, hinder, or
defeat creditors, is not such an assignment as is contemplated by
section 2014, General Statutes.  I have not been able, therefore,
to see that the facts of this case bring it within any principle
upon which the liens and mortgages to Bischoff & Co. can be set
aside, or the sales under them set aside and the property resold.
It is therefore adjudged, that the complaint be dismissed."

From this decree the plaintiffs appeal to this court.  The ex-
ceptions are numerous (17 in number), and being long, need not
be set out here.  They are in the Brief.  Exception 12, alleging
that the lien and mortgages constituted an assignment with pre-
ference, within the provisions of section 2014 of the General
Statutes, was properly abandoned.  Exceptions 9 and 11 do not
controvert any ruling of the judge, but simply complain of his
reasoning.  2, 3, 4, and 5 only call attention to certain unessen-
tial errors in the statement of facts which did not affect the deci-
sion, and are herein corrected.

Exceptions 6, 7, 8, 10, 14, 15, 16, and 17, in various forms
substantially complain, that the judge erred in finding that there
was no fraudulent collusion at any time between Clayton and
Bischoff & Co., or their agent, Easterling, and that the sales
made, both under the agricultural lien and the mortgages, were
open and fair, when it is submitted that the onus of proving fair-
ness in the sales being on the lienees, the overbearing weight of
the testimony proves the contrary, and the judge should have so
ruled.  The liens and mortgages were taken in the due course of
business, in the usual form, for advances actually made, and there
can be no doubt that in their inception they were free from all
just objection.  Really, at the time they were taken, the demand
of T. J. Magruder & Co., the complaining creditors, had not
been contracted and was not in existence.  The only question,
therefore, is whether any improper use was made of those securi-
ties—whether the sales of the property under them were collu-
sive, unfair, and fraudulent, for the benefit of Clayton, and

whether Bischoff & Co., through their agent, directed or participated therein.

This was purely a question of fact, which the Circuit Judge determined in favor of the defendants. It is perfectly well known, without the citation of authorities, that it is the practice of this court not to disturb the finding of a Circuit Judge on a question of fact, unless it is without evidence to sustain it or against the weight of the evidence. It has sometimes been said that this is especially true when, as in this case, the trial judge saw the witnesses and heard them testify, Was the finding here without evidence to sustain it? We have read the book of testimony carefully. All the parties connected with the sales, Clayton, Easterling, and the deputy sheriff (Wells), testify that there was entire fairness in all of them; that there was no collusion, fraud, or intent to defraud. Wells sold the crop under the agricultural lien as deputy sheriff, as such sales are generally made (estimating the quantity), without the least interference from Easterling or Clayton; and he sold the stock of mules and horses and the merchandise in store as the agent of Bischoff & Co., the mortgagees, after condition broken. It may be that the stock of goods was sold hastily and without proper attention to detail; but the sale was regularly advertised, and it must not be overlooked that it was a forced sale for cash, in the month of January. It seems to us that the fact that the property was not immediately removed from the premises was reasonably explained by the circumstances and the testimony of all the parties. We do not feel authorized to say that the finding that there was no collusion or fraud was against the overbearing weight of the testimony.

Exception 1. "Because his honor, the presiding judge, erred in not giving judgment upon the account of appellants against the respondent, Virgil P. Clayton, for the sum demanded in the complaint; when it is respectfully submitted his honor should have ordered judgment on said claim against the defendant, Clayton, and not have dismissed the complaint." Under the code the plaintiff may unite in the same complaint several causes of action, whether they be such as have been heretofore denominated legal or equitable or both. The first cause of action embraced

the account against Clayton, and prayed judgment on it for the sum of $714.98, with interest thereon from January 6, 1886. The defendant, Clayton, in his answer admitted that he got the goods; that the account was correct and no part of it had been paid, but stated that it was not due and owing on January 6, 1886, as claimed.   The cause of action, so far as concerned that account, must be considered as on a money demand, and legal in its character.   The answer possibly raised an issue of fact as to whether the account was due, which was triable by a jury; but as no objection was made to the hearing of it by the judge, along with the other issues, which were equitable, "we must assume that a jury was waived in the formal mode required by the code." See *Whaley* v. *Bank of Charleston*, 5 S. C., 201.

In his testimony, Clayton again stated that he got the goods, and the account was correct, but that it was contracted "on four months' time," which, as he understood it, was to run from the first of October, and did not expire until February 1, 1886. Mr. John McQueen (one of the lawyers charged with the collection of the account), however, testified that some time in the month of January, before the action was commenced, he went to see Mr. Clayton, at Cash's depot, about the account; and on that occasion also he admitted the account was correct, but being, as he said, very much embarrassed, he could not pay it, and refused to accept service of a writ, so as to enable the plaintiffs to recover judgment at the approaching term of the court.   Clayton always admitted that the account was due and owing on February 1, 1886, and the "Case" states that "the action was begun in February, 1886."   We think it was error to dismiss the complaint, so as to carry the demand of the plaintiffs, seeking judgment against V. P. Clayton on the account for $716.98, but that the Circuit Judge should have rendered judgment for the same.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, except as to the demand of the plaintiffs against V. P. Clayton; and as to that the order dismissing the complaint be reversed, and judgment rendered against the said Clayton for $716.98, and so much of the costs as were incurred in obtaining the same.